06-3221 Nancy Shucker v. FDIC 06-3221 Nancy Shucker v. FDIC Before I turn to the merits of the appeal, I'd like to discuss in brief the facts that I think are essential to an understanding of this matter. I know this court is aware of the savings and loan crisis due to the numerous opinions that came out of the Windstar cases that were before the court. But in this case, Ms. Shucker joined the FDIC in 1988 in the Regional Affairs Division as a resolutions attorney, or became a resolutions attorney. We need to understand what resolutions is and how it was handled within the FDIC legal division in order to correctly assess this case. Resolutions is a term of art. It means nothing outside the context of the FDIC legal division. And what it simply is is the efforts that the FDIC engaged in to resolve a failed financial institution, which could have been a deposit insurance payout on one hand, the most simplest form. And the most complicated form would be a detailed negotiation with some of the largest corporations in the world, including Citibank, Bank of America, Wells Fargo, and the same. The attorneys who were assigned to the resolutions process, which in 1988 were two or three because we were dealing with the pre-FIREA days, were in charge of negotiating those transactions, working with the client on those transactions, and documenting those transactions. Well, what happened after the 1988 time frame, you might recall that the FDIC was solely in the business of commercial banks at that time, but FIREA was passed in 1989. It became responsible for that. Mr. Choochoo, your time is limited, and we do know these facts. They're in their briefs. The point that I want to make, Your Honor, is in the early 1990s, the number of resolutions attorneys was no longer two or three. There were about 20 attorneys assigned, and they were dealing with hundreds of resolutions at a time in each of those years. As that work dwindled, and it dwindled during the 1990s, something had to happen to those attorneys. Some of them went in one direction to other places in the FDIC, and some of them there were left at the end of the day. And the attorneys who were left there at the end of the day were transferred to the special project section, which became the special issues unit. Now, the essential issue here in this case is does the attorney, counsel 15 in the resolution section, which is the position that Ms. Shooker occupied in the mid-1990s, have a right to retreat to the counsel 15 in the special issues unit who focuses in resolutions? Our contention has been that those positions are essentially the same. Does that attorney, does that position now in the special issues group only focus on resolutions? There are a number of attorneys in the special issues unit. They focus on different areas of expertise. One of those areas of expertise is resolutions. One of the areas of expertise is tax. One of the areas of expertise- But I guess what I'm asking, Mr. Tucci, will one of these attorneys in the special issues unit, say there's 10 of them, that may be wrong, does one just do resolutions and other just do tax, or does each one do sort of a mix of all the issues that the unit sees? I think there's a combination of that. Some of them do one issue, some of them do more than one issue. If you recall that the position description for those attorneys requires a proficiency in one or more of those specialty areas. It does not require more than one. It requires a proficiency in one or more. So if there is an attorney, one attorney assigned solely to do resolutions, that is totally within the context of the position description. Now, I can't tell you today whether there is one attorney who focuses solely on resolutions. Is there a question here, is it known, or maybe this isn't analytically the correct way, but is it known which position specifically Ms. Shucker was seeking to retreat to? In other words, was it an attorney, was it a position where the incumbent, I guess, just did one issue, or was it one of the positions where the incumbent did various issues? Or was that not relevant? I don't think it's relevant, and the reason is that there was an ability to retreat to a position in that unit. The only thing that was required was a proficiency in one of those subject areas. And the reason Ms. Shucker had a proficiency in one of those subject areas is because she had been at Council 15 in the resolution section. So she was an expert, which is what was required of the Special Issues Unit. And a matter of fact, the only way anybody could have obtained the expertise to be the expert in resolutions in the Special Issues Unit was by being a Council 15 in the resolution section. You couldn't have taken somebody off the street and said, you are now in charge of Special Issues Resolution. It couldn't have happened any other way. But as the court is fully aware, the standard here is whether the two positions, the Council 15 in resolutions and the Council 15 in Special Issues focusing on resolutions, whether they should have been in the same competitive level. We don't know whether they were because they existed at two different points in time. But when we make the determination whether they should have been in the same competitive level, we do it by making an assessment of whether or not they're in the same grade, classification series, and are similar enough in duties, qualification requirements, pay schedules, and working conditions so that the agency may reassign the incumbent of one position to any other position in the level without undue interruption. Now, we take that standard and coupled with the burden of proof being on the agency and this court in the Heelan decision in 1998, succinctly stated that the burden was on the agency to show that it had properly placed, and I'm quoting from 1311 of the Heelan decision, which is 154F3rd1306, that Mr. Heelan and Ms. Stiles, they had properly placed Mr. Heelan and Ms. Stiles in separate competitive levels. The department there was the Department of Commerce must show that a person qualified to perform Mr. Heelan's position could not assume Ms. Stiles' position without undue interruption. So what that means in the context of this case is that the burden was on the FDIC to show that an incumbent of the Council 15 resolutions could not perform the Special Issues Unit Council 15 with an emphasis on resolutions without undue interruption. Now, the record below has absolutely no evidence that such a finding was made. The board did not find that the Council 15 could not perform, Council 15 resolutions could not perform Council 15 special issues without undue interruption. None of the FDIC witnesses testified that the Council 15 resolutions could not perform the Council 15 special issues focusing resolution without undue interruption. And so what we're left here with is that absence of evidence on the one hand, and on the other hand, the evidence that at the time the resolution section was disbanded, the attorneys who were left there doing resolutions work were transferred to that section and continued doing the same work. That's the record. Isn't that an assumption that you're making?  Didn't find what, Your Honor? The AG was essentially, the AJ was specifically finding the differences in the position. The AJ found differences in the position. The AJ found that the positions differed in focus, but that's not the correct legal standard. The correct legal standard is whether the incumbent of one position could perform the duties of the other without undue interruption. If you accept the AJ's standard, and accept this amorphous focus that the AJ was focused on. What do you mean by focus? The AJ said that, the board concluded through the AJ's opinion that the positions were not the same or essentially identical because they differed in focus. Well, that is an amorphous distinction or decision. Well, there was a finding, though, that they were not essentially identical positions. That's right, but when you make that finding, you have to find that the incumbent of one position, they're so different that the incumbent of one of the positions, the position that was vacated, cannot perform the duties of the incumbent of the other without undue interruption. That's the legal standard. You had the testimony of supervisors, a supervisor, and a personnelist. And again, all they did testify to was differences in the position descriptions. The supervisor didn't go further? No, they never said, the supervisor never said, and nobody except the witnesses on behalf of Ms. Shooker have ever said, and then, of course, Ms. Shooker's witnesses have testified that the incumbent of one could perform the duties of the other without undue interruption, but the AJ never found, the board never found, and the FDIC witnesses never said that the incumbent 15 council resolutions could not perform the SIU, Special Issues Council focusing resolutions. And without that finding, I don't think that the board's decision can be affirmed. Because what you've done is you've taken this very detailed legal standard and turned it into a competition over whether we can find differences in two position descriptions that were drafted five years apart. Of course you can't. Well, why don't we hear from the government and let you come back and rebuttal? Thank you. Good afternoon, Your Honor, and may it please the court. Turning right to the undue interruption question that Mr. Tucci was just discussing, the AJ. That is the key, isn't it? The evidence of it. That's the real one. It is a key. The MSPB, through Alice's decision, stated that these two positions were not interchangeable. And this court has held in the Healand decision and the MSPB has continually held in all of its precedent that the essence of this determination is interchangeability, which encompasses undue interruption. And throughout its decision, it uses the terms interchangeability, these positions are not essentially identical. Nowhere in this court's precedent or in the MSPB's precedent has the MSPB or this court ever said that witnesses have to use those buzzwords. And in fact, the agency's, first of all, the position descriptions for these two positions demonstrate very different positions. They show different duties. They show that different knowledges and skills are required. They show different levels of responsibility. Now, is that a legal determination or a factual determination? It's both, Your Honor. In other words, under the regulations, the regulations say that two positions are essentially identical if they would be placed in the same competitive level. They belong in the same competitive level if they are similar enough in duties, qualification requirements, et cetera, so that the incumbent of one position could be placed in the other position and do any of the jobs in the other position. But a court can determine what those functions are, can't it? Doesn't need facts to do that. It can just take the two PDs and compare them one with the other. Absolutely. This court has said that the primary determinant of whether two positions belong in the same competitive level are the position descriptions. So there's the station. So that's a legal determination. A legal determination, right, based on the facts. And the facts here, there is enough in the record that they As far as the two PDs are concerned, we can compare the two and make a determination as to whether or not they're essentially equivalent positions. Yes. Yes, you can, Your Honor. Without any outside facts. Absolutely, Your Honor. As the MSPB did, but not only do you have the position descriptions in the record here, you have affidavits of two agency officials. One with 30 years of experience in personnel matters in prior rifts who held up these two position descriptions and said that even though the former resolution's council position no longer existed, it would not be placed in the same competitive level. You have an assistant general counsel, the only witness who testified here, who supervised counsels working under both position descriptions, who explained why these two positions were different, why the duties of both positions were different, and why even if you limited the analysis of a counsel in the special issues unit doing resolutions as a specialty,  section positions. Does that go to the scope of the positions? Pardon me? Does that go to the scope of the positions? It goes to the duties of the positions as well. He was explaining the differences. What is the difference between the scope and the duties? The scope of the duties? No, the scope and the duties. Is there a difference between the two? Yes, there is a big difference between the two. The counsel in the special issues unit was an attorney who was charged with managing and coordinating one or more special issues for the agency nationwide. The counsel in the resolution section was one who participated in assistance transactions on behalf of the agency. That indicates not only a difference in scope, but a difference in level of responsibility. If you look at the position descriptions, there is also a difference in the knowledge and skills required for both of these positions. So it's really a management position versus a non-management position. It is a, it has management components to it, yes. The special issues counsel managed attorneys across the agency, but also outside counsel. And that individual had to have management skills, but it also had a litigation component. That individual had to be familiar with and have litigation skills, as well as be able to write pleadings, for instance, for litigation. So there are vast differences here. The evidence that Ms. Shooker provided, which was an affidavit of a former supervisor, does nothing more than attempt to rewrite these position descriptions through testimony, which isn't permitted under this court's precedent or under the precedent of the MSPB. If you look at all of the cases that dealt with whether two positions belonged in the same competitive level, or whether employees should be permitted to retreat from an old position to a new position, in none of those cases did the MSPB or this court allow duties to be added to a position description through testimony. Testimony can be used to explain position descriptions, but not rewrite them. So it doesn't really matter what they actually did. It's what they were supposed to. You have testimony about the practice. You have testimony about the practice. From the former supervisor. From her former supervisor. What they really do, as opposed to what? Well, Your Honor, if you look at that affidavit, what Ms. Taft is testifying about is the two position descriptions themselves, which the MSPB was able to do. And she looks at a duty in the special issues unit and says, look at a duty in the old resolutions section, and this is what that means. It is not exactly, although there is some testimony about what the old resolutions council did, it's a comparison of the two position descriptions. And the MSPB did not find what Ms. Taft testified was in the old resolution section position description. So it found that her testimony, by and large, was not persuasive or helpful. Thank you. Mr. Tucci argued that the MSPB applied the wrong legal standard by using the word focus. If you look, though, at the MSPB's decision and where it uses the word focus, it appears on page six of its opinion. I think it's on page A10 of the record. And that word first appears after the MSPB looks at the position descriptions and the evidence. And it's a word that it uses to summarize its view of the evidence. It's not an application of the wrong legal standard. The MSPB properly placed the burden of proof on the agency at the beginning of the opinion. At the end of the opinion, it finds that the agency met its burden of proof. And again, it compared all of the duties of the two position descriptions and found that these two positions were very different and were not essentially identical. But it does use the term focus with respect to the statement that did not change my conclusion for the jobs are not the same or essentially identical because of focus of a counsel and special issues unit, even when specializing resolutions and providing overall coordination and management. That's correct, Your Honor. But that word appears after the MSPB goes through and analyzes the position descriptions. And it's a word that the AJ uses to summarize her view that the two positions have very different duties. It's not an application of an incorrect legal standard. The AJ goes through prior to that and explains the legal standard, which is two positions belong in the same competitive level if they're similar enough in duties so that the incumbent of one level could do any of the jobs in the other competitive level. It's a summary of her view of the evidence. If the court has no further questions for me, I'm done. Thank you.  Mr. Ducey. Thank you, Your Honor. Let me address the interchangeability issue. The board did find that the positions were not interchangeable, but it did so on an inaccurate premise. If you look at page 12 of the board's opinion, where the AJ said, I would be unable to find that the positions were interchangeable because the agency could not assign that incumbent to the other subject areas and could not assign the incumbent of a counsel position in the special issues unit, not having expertise in resolutions to the resolution section. What the board said was because the special issues unit has a plethora of specialty areas, you could not take a resolutions counsel and put them in the special issues unit and give them the job in specializing in tax or specializing in environmental or specializing in securities. We don't dispute that. They were in the same competitive level, but they were wrongly in the same competitive level, all of the special issues unit positions. In other words, and we make this point in our brief, the special issues position concentrating in tax and concentrating in securities were in the same competitive level, but they're not interchangeable. So all the board did was recognize the lack of interchangeability in the special issues unit, not that the special issues unit resolutions position was not interchangeable with the special issues, or excuse me, the resolutions counsel position. And it would be a travesty to uphold the board's decision on the basis of FDIC incorrectly classifying the counsel positions in the special issues unit, which is, in fact, what they did. Ms. Tass affidavit does not try to rewrite the position descriptions. It discusses the similarities between the two positions by somebody who drafted one of the position descriptions and who was intimately familiar with the duties under both. She compared not only the position descriptions, and we have a chart that compared the position descriptions to our brief, which is three pages, which compares not only the position descriptions, but the testimony about the position descriptions and the duties under each one, showing where the positions were essentially identical because the same duties could be found in either of them, which brings me to my final point. The issue here is not, it shouldn't be, whether two position descriptions that are drafted five years apart contain different language. And that should not be the basis for deciding this case. We have a standard. The standard is whether the incumbent of one position could perform the duties of the other position without undue interruption. If we devolve this area of the law into a dispute or a contest over whether there's a difference in the second position description because it says two things differently than is in the first position description, that will create a tremendous amount of uncertainty in the law. Also, looking to the focus of the positions is also not the correct legal standard. Differences in the position description and differences in focus are only relevant if they lead to the conclusion that the incumbent of one could not perform the duties of the other. And there was no finding of that in this case. All right. Thank you very much. The next case will be 06-1375. Optract.